UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SKYMARK REAL ESTATE INVESTORS, LLC,

    Plaintiff,

v.                              Case No.  6:12-cv-1300-Orl-18TBS

7L CAPITAL, LLC,

    Defendant.

## ORDER

Pending before the Court is Defendant's Motion to Dissolve Lis Pendens or, in the Alternative, to Require Lis Pendens Bond (Doc. 11). Now, the Court makes the following findings of fact and conclusions of law based upon the evidence and argument presented by the parties in their papers and at the evidentiary hearing conducted on December 18, 2012.

### I.  Findings of Fact

1. Defendant 7L Capital, LLC ("Seller") acquired title to Tract D Westside Phase 2, according to the plat thereof, as recorded in Plat Book 20, Pages 180-182, Public Records of Osceola County, Florida (the "Property"), through foreclosure in 2010.

2. Seller contracted (the "Contract"), to sell the Property to Plaintiff Skymark Real Estate Investors, LLC ("Buyer").

3. The Contract provides, among other things, that:

    a. The purchase price was $806,000.

      b.  The effective date was August 1, 2012.

      c.  Buyer would pay a $10,000 deposit into escrow contemporaneously with its execution of the Contract.

      d.  Buyer had 30 days following the effective date to perform its investigation of the Property (the "Investigation Period").

      e.  Seller, at its expense, would provide a preliminary title commitment to Buyer within 10 days from the effective date of the Contract.

      f.  Buyer had 10 days from its receipt of the preliminary title commitment to notify Seller of any objections founded on title not being marketable in accordance with guidelines promulgated by authority of The Florida Bar.

      g.  If Buyer failed to make title objections within 10 days following its receipt of the preliminary title commitment then Buyer was deemed to have approved the commitment and all matters disclosed therein.

      h.  If Buyer made title objections within 10 days following its receipt of the preliminary title commitment then Seller had 3 days to give notice that it would either cause or not cause the title objections to be removed or insured over by the Title Company.  If Seller did not give Buyer any notice within the 3 days, then Seller was deemed to have determined not to remove the title objections or cause the objections to be insured over by the Title Company.

      i.  If Seller determined not to remove Buyer's title objections or cause the Title Company to insure over them, then Buyer had 5 days to terminate the Contract or waive its objections and proceed to closing.

   j.  On or before the expiration of the Investigation Period, Buyer would deliver an additional $20,000 deposit to the escrow agent.

   j.  The closing would occur 15 days after the expiration of the Investigation Period.

   k.  If Seller committed a material default of the Contract, Buyer's remedies were to terminate the Contract and receive back its deposit plus up to $5,000 in actual damages or, Buyer could sue for specific performance.

   l.  The parties were prohibited from recording the Contract.  If Buyer caused the Contract to be recorded, it would be deemed in breach and its rights under the Contract would be deemed terminated.

   m.  The Contract does not contain a general "time is of the essence" clause.  Time was only of the essence with respect to certain provisions, including the closing date.

  4.  Seller delivered the preliminary title commitment to Buyer on August 21, 2012.

  5.  Buyer accepted the preliminary title commitment and the parties agreed to close on September 17, 2012.

  6.  On or about August 18 or 19, 2012, Joel Piotrkowski, in his capacity as attorney for Buyer had a telephone conversation with Penelope Turnbow in her capacity as in-house counsel for Seller.  During that conversation, Piotrkowski learned, for the first time, that a developer in the chain of title had entered into

approximately 65 contracts for the sale of lots to be carved out of the Property (the "Lot Contracts").

7.  Nothing in the public records would give a title examiner notice of the Lot Contracts.

8.  Immediately upon learning about the Lot Contracts, Piotrkowski requested copies from Turnbow.  She said it would cost Buyer $800,000 to obtain copies of the Lot Contracts.  Buyer felt Turnbow's request for an additional $800,000 for copies of the Lot Contracts was an attempt to extort Buyer.  It also felt that the statements by Seller's representatives about the Lot Contracts were intended to spook Buyer into backing out of the Contract.

9.  Piotrkowski subsequently asked Mario Iglesias in his capacity as Seller's outside counsel for copies of the Lot Contracts.  Iglesias, who had only seen a few of the Lot Contracts, told Piotrkowski they contained a confidentiality provision, and therefore, could not be disclosed.

10.  Piotrkowski was concerned that the Lot Contracts might affect title to the Property and he informed Buyer that he could not assure it would receive good title or that there would not be future title problems.  Although the preliminary title commitment did not include an exception for the Lot Contracts, Piotrkowski felt that $806,000 in title insurance would not be sufficient to avoid a potential disaster if the holders of the Lot Contracts asserted claims against the Property.

11.  During the month of August, 2012, Seller did not tell Piotrkowski it was not going to close or that it had any better offers for the Property.  Still, Piotrkowski has

practiced real estate law for 35 years and based upon his experience, the transaction lacked the necessary "synergy" to close. Piotrkowski felt he felt as though he was having to "drag" Seller to closing.

    12. One of the partners in Seller told the managing member of Buyer that the other partners in Seller were unhappy with this deal. Consequently, this partner in Seller wondered if there was an amount of money Buyer would take to cancel the transaction.

    13. On August 24, 2012, Buyer filed this suit alleging anticipatory repudiation of the Contract by Seller and requested specific performance as the remedy. Buyer attached a full copy of the Contract to its complaint and recorded a notice of lis pendens in the public records.

    14. Buyer's complaint alleged that Seller anticipatorily repudiated the Contract as follows:

        a. By failing to provide the preliminary title commitment within 10 days of the effective date of the Contract.

        b. By providing the preliminary title commitment with caveats designed to thwart the sale of the Property to Buyer. This is a reference to the Lot Contracts.

        c. Upon information and belief, by entering into a contract with a third party purchaser.

        d. By making statements through its representatives that Seller was attempting to repudiate the Contract so that it could sell the Property to the third party purchaser.

15. Buyer filed the lawsuit because it did not believe Seller was acting in good faith. Buyer believed it had negotiated in good faith, that it was paying a fair price for the Property, and that it had a binding contract with Seller. By filing the lawsuit Buyer hoped to protect its interest in the Property, that the transaction would close, and that the lawsuit could be dismissed at closing.

16. During the months of August and September, Buyer made no attempt to serve the lawsuit on Seller.

17. Buyer did not inform Seller that the lawsuit had been filed. Instead, Buyer proceeded toward closing, knowing that shortly before closing, Seller would update the title commitment and discover the lawsuit.

18. On August 28, 2012, Buyer paid the second installment of the deposit to the escrow agent.

19. On August 30, 2012, Iglesias received a timely title objection letter from Piotrkowski. In the letter, Piotrkowski asked for copies of the Lot Contracts.

20. Iglesias ordered an updated title commitment which he received on September 11, 2012. The updated title commitment lists Buyer's lawsuit as an exception to title.

21. Buyer's position was that its lawsuit would be dismissed at closing and that even if it wasn't dismissed at closing, once Buyer took title to the Property, the lawsuit would merge into Buyer's title and thus, be extinguished.

22. Seller's position was that Buyer had materially breached the Contract by recording a copy in the public records; in doing so, Buyer had slandered Seller's title;

and that Buyer had not complied with all conditions precedent to the institution of the lawsuit because the lawsuit was filed before the second installment of the deposit was paid.

23. Buyer was ready, willing and able to close on September 17, 2012. Seller refused to close on that or any other date. This has confirmed in Buyer's mind that Seller never intended to close the Contract.

24. Buyer's lawsuit was served on Plaintiff on October 2, 2012.

25. The Contract did not prohibit Seller from entering into backup agreements for the sale and purchase of the Property and, while there is evidence of other interested prospective purchasers, there is no evidence that Seller ever entered into any other agreement to sell the Property.

26. Real estate taxes on the Property are $26,145.51 per year and community development district fees are approximately $88,000 per year.

27. Between the transaction and this litigation, Seller has expended approximately $50,000 in attorneys' fees.

28. Seller has received a letter of intent to buy the Property for $1,300,000.

## II.  Conclusions of Law

29. According to 23 Williston on Contracts § 63:46 (4th ed.), "[a] party may repudiate a contract expressly or by implication." And, at section 63:45 of the treatise, the author states that:

> . . . in order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional. The rule has alternately been stated that the repudiating party must communicate "unequivocally and

>positively its intention not to perform;" communicate a "positive, unequivocal or distinct renunciation" of the agreement; or "unequivocally signif[y] its intent to breach the contract;" or that the repudiation be a "definite and unequivocal manifestation" of the intention not to render performance; be "clear and unequivocal;" "evinc[e] a 'distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement';" or be "entire, absolute, and unequivocal."   (internal citations omitted).

23 Williston on Contracts § 63:45 (4th ed.)

30.  Florida case law holds that "[a]n anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." Alvarez, M.D. v. Rendon, M.D., 953 So. 2d 702, 709 (Fla. 5th DCA 2007); see also  Mori v. Matsushita Electric Corp. of America, 380 So. 2d 461, 463 (Fla. 3d DCA 1980) ("A prospective breach of the contract occurs when there is absolute repudiation by one of the parties prior to the time when his performance is due under the terms of the contract.  Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute.").

31.  At no time prior to Buyer filing its lawsuit did Seller state, unequivocally or otherwise, that it did not intend to close the transaction.  Additionally, Seller did not take any affirmative action which would have rendered it unable or apparently unable to perform the Contract.

32.  Time was not of the essence when it came to delivery of the preliminary title commitment which was accepted by Buyer.  The parties agreed to the use of a title commitment to deal with the condition of title to the Property.  Seller provided a

title commitment without exception for the Lot Contracts and Buyer has failed to direct the Court to any provision in the Contract or applicable law that required Seller to furnish Buyer copies of the Lot Contracts.

33. Buyer believes Seller mentioned the Lot Contracts to discourage Buyer from closing. That belief, even if correct, does not constitute an anticipatory repudiation of the Contract by Seller. Ultimately, Buyer was not sufficiently concerned about the Lot Contracts to withdraw from the transaction but if it had been, then its remedy was to terminate the deal.

34. Buyer had no right to file suit for specific performance unless and until the closing came and went and Seller refused, without good cause, to close.

35. Even if the Court assumes Seller had entered into one or more agreements to sell the Property to third parties, Seller's actions did not constitute a breach of the Contract.

36. The inquiry by one of Seller's representatives about paying a sum of money to Buyer to get out of the transaction, regardless of the reason, did not evince Seller's intention not to close the Contract. Seller was free to ask and Buyer was free to say "no." The result was that the Contract remained in force and Seller was obligated to close. Seller never said it would not close and it never took any action that would have prevented it from closing.

37. Seller did not commit an anticipatory repudiation of the Contract and Buyer did not have a legal basis to file its lawsuit or record its notice of lis pendens. Both actions constituted material breaches of the Contract by Buyer.

38. "[T]he record is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned form the record, if it had been examined, and inquiries suggested by it, duly prosecuted, would have disclosed." Zaucha v. Town of Medley, 66 So. 2d 238, 240 (Fla. 1953) (emphasis in original). The result of attaching a copy of the Contract to Buyer's complaint and then recording the notice of lis pendens in the public records was no different than if Buyer had recorded the Contract in the public records. Buyer's actions gave the world constructive notice of the Contract and its contents and allowed any prospective purchaser of the Property who investigated title to know the precise terms upon which Seller was willing to sell the Property. The recording of Buyer's lis pendens constituted a material breach of the Contract by Buyer.

39. Seller contends, and Buyer does not dispute, that a material breach by one party excuses the other party from performance of the Contract. When Buyer filed the lawsuit and recorded the notice of lis pendens, it materially breached the Contract and Seller was under no obligation to close the Contract.

40. "A condition precedent has been defined as one which calls for the performance of some act, or the happening of some event after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." Alvarez, 953 So. 2d at 708. When Buyer filed suit before making the second deposit required by the Contract it acted prematurely and before it had satisfied all conditions precedent to the institution of the action.

41. "When the pending pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 or when the action no longer affects the subject property, the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions." § 48.23(3) Florida Statutes.

42. Court's routinely require the proponent of a lis pendens that is not based upon a recorded instrument to post a bond since the lis pendens frequently prevents the owner from selling his land. S and T Builders v. Globe Properties, Inc., 944 So. 2d 302, 304 (Fla. 2006). The Court properly includes attorney's fees in the calculation of a reasonable bond. Id. at 305-06.

43. The requirement of a bond is appropriate in this case. In determining the amount of the bond, the Court is not influenced by letters of intent. The Court finds that a bond of $328,467.02 is reasonable. This amount is based upon real estate taxes and community development district fees for two years plus $100,000 in estimated attorneys' fees.

### III.  Conclusion

44. Buyer has 14 days from the rendition of this Order within to post a $328,467.02 lis pendens bond for the benefit of Seller. If the bond is posted, Buyer's lis pendens shall remain in effect. If the bond is not posted in conformity with this Order, then this Order shall operate to discharge and extinguish the notice of lis pendens Buyer filed and recorded in connection with this action.

IT IS SO ORDERED.

DONE AND ORDERED in Orlando, Florida, on December 19, 2012.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel