**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SKYMARK REAL ESTATE INVESTORS, LLC,**

     **Plaintiff,**

**-vs-**             **Case No. 6:12-cv-1300-Orl-28TBS**

**7L CAPITAL, LLC,**

     **Defendant.**

_____

# ORDER

Skymark Real Estate Investors, LLC ("Plaintiff") has filed a two-count Amended Complaint (Doc. 16) against 7L Capital, LLC ("Defendant"), alleging anticipatory repudiation of a land sale contract and breach of that contract. The case is now before the Court on Defendant's Motion to Dismiss (Doc. 22) and Plaintiff's Memorandum in Opposition (Doc. 24). As set forth below, Defendant's motion is granted as to both counts.

## I. Legal Standards

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550

U.S. at 570).[1]

In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Moreover, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), including for the purpose of assessing a Rule 12(b)(6) motion, Solis-Ramirez v. U.S. Dep't of Justice, 758 F.2d 1426, 1430 (11th Cir. 1985).

## II. The Contract and the Allegations of the Amended Complaint

Defendant and Plaintiff entered into a Purchase and Sale Agreement ("the Agreement")[2] dated August 1, 2012, pursuant to which Defendant was to sell a parcel of land in Osceola County—described as "Tract 'D,' Westside Phase 2, according to the plat thereof, as recorded in Plat Book 20, Pages 180-182, Public Records of Osceola County,

---

[1]In its opposition memorandum, Plaintiff cites a standard that no longer applies. Plaintiff asserts that a complaint should not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that claimant can prove no set of facts in support of his claim that would entitle the claimant to relief." (Doc. 24 at 6). However, this "no set of facts" language, which originated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), was expressly disapproved by the Supreme Court in Twombly. See 550 U.S. at 562-63 (abrogating Conley and noting that "[w]e could go on, but there is no need to pile up further citations to show that Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough" and that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). The Court has analyzed Defendant's motion under the Twombly and Iqbal standard rather than the Conley standard.

[2]The Agreement is attached to both the initial Complaint (Doc. 1) and the Amended Complaint, and it is referenced in and central to both. As noted in the text, the Court may properly consider it and other attachments in ruling on the motion to dismiss.

Florida"—to Plaintiff for $806,000. (Agreement at 1). The Agreement called for Plaintiff to make a $10,000 deposit at the time of execution of the Agreement, an additional deposit of $20,000 within thirty days thereafter, and the balance of $776,000 at closing. (Id. at 1-2). Plaintiff had thirty days from the date of execution—"the Investigation Period"—"to notify [Defendant] that for whatsoever [sic], or no reason, that in [Plaintiff]'s sole discretion" Plaintiff did not want to purchase the land and close but instead wanted to terminate the Agreement. (Id. ¶ 5.8). Closing was to occur fifteen days after the end of the Investigation Period, with "time being of the essence" for closing. (Id. ¶ 4.1).

The Agreement obligated Defendant to provide a preliminary title commitment to Plaintiff within ten days of its execution. The title commitment was to be "the standard current form of American Land Title Association (ALTA) owner's commitment of title insurance or irrevocable commitment to issue the same, with liability in the amount of the Purchase Price insuring that fee title to the Land will vest in [Plaintiff] subject to the Permitted Encumbrances" listed on a schedule attached to the Agreement. (Id. ¶ 3.1). Plaintiff then would have ten days after receiving the title commitment to notify Defendant "of any objections that are founded on title not being marketable as determined in accordance with title guidelines promulgated by authority of The Florida Bar." (Id.). If Plaintiff gave notice of title objections, Defendant would then have three days to notify Plaintiff in writing that Defendant either (a) would cause, or (b) elected not to cause, any or all of the title objections disclosed to be removed or insured over by the title company. (Id.). If Defendant elected not to have the objections removed, Plaintiff could either terminate the Agreement or waive the title objections and proceed to closing. (Id.).

In a section called "Buyer's Remedies," the Agreement provides that "[i]f the sale is not completed as herein provided solely by reason of any material default of [Defendant], [Plaintiff] shall be entitled, as its sole and exclusive remedy, to either (i) terminate this Agreement . . . or (ii) treat this Agreement as being in full force and effect and pursue specific performance of this Agreement . . . ." (Id. ¶ 7.2). The Agreement also states that it "may not be recorded and any attempt to do so shall be of no effect whatsoever. The recording of this entire Agreement by [Plaintiff] shall cause this Agreement and all rights under it forthwith to terminate without the necessity of any further action on the part of the [Defendant], and shall be deemed a breach of this Agreement." (Id. ¶ 8.6).

Plaintiff alleges in the Amended Complaint that it tendered the initial deposit and began its investigation and due diligence regarding the property. (Am. Compl. ¶ 7). Further, Plaintiff alleges that during the Investigation Period, Plaintiff "had a real and present concern that [Defendant] was attempting to repudiate the terms of the [Agreement] through taking actions that appeared to [Plaintiff] to be thwarting its ability to close." (Id. ¶ 8). Plaintiff allegedly was concerned by: (1) Defendant's provision of the title commitment on August 21 instead of on August 11; and (2) a statement in correspondence along with the title commitment confirming that Defendant had "disclosed to [Plaintiff] the existence of 65 potential contract purchasers who may claim an interest under agreements of questionable enforceability." (Id. ¶ 9; Ex. B to Am. Compl.). Plaintiff further alleges that "[m]oreover, and perhaps more importantly, certain third parties that were either directly or indirectly associated with [Defendant] orally communicated to [Plaintiff] . . . that (i) [Defendant] received another, pending offer from a third party purchaser that is significantly higher than

-4-

the contract price and that (ii) [Defendant] made other statements and representations to [Plaintiff] that resulted in [Plaintiff's] objective belief that [Defendant] was actively attempting to repudiate the [Agreement] based on the fact that [Defendant] had a better deal elsewhere." (Am. Compl. ¶ 10).

In alleged response to these actions, Plaintiff filed this lawsuit on August 24, 2012—three days after receiving the title commitment from Defendant—with a copy of the Agreement attached to the Complaint. (Id. ¶ 11; Ex. A to Doc. 1). Plaintiff also filed and recorded a lis pendens at that time. Plaintiff did not immediately serve Defendant with the Complaint, however, and Defendant did not become aware of the lawsuit until several weeks later.

Plaintiff alleges that after filing suit, it "continued to perform in accordance with the terms of the [Agreement]" and made the second deposit of $20,000. (Am. Compl. ¶ 12). As indicated by emails between the parties' transactional attorneys that are described in and attached to the Amended Complaint, the parties were proceeding toward a scheduled September 17 closing until Defendant learned on September 12 that Plaintiff had filed this lawsuit and, while running a title update, discovered the lis pendens. (See id. ¶ 13; email exchanges, Ex. C to Am. Compl.). Defendant stated in one of the September 12 emails that "despite the fact that [Defendant] was ready, willing, and able to close on Monday, September 17, 2012 as agreed and in conformance with the [Agreement], your client's breach by slandering the [Defendant's] title and initiating this extortion suit has given rise to a termination of the [Agreement]." (Ex. C to Am. Compl., at 3). Plaintiff then asked for confirmation of closing, and Defendant responded that there would be no closing. (Id. at 2).

-5-

Plaintiff alleges that these emails "demonstrate[] [Defendant's] clear and unambiguous refusal to perform on the closing of the purchase and sale." (Am. Compl. ¶ 14). Additionally, Plaintiff asserts that these emails show that Defendant "believed that other third party purchasers would be interested in purchasing the [property] at a higher price" and that Defendant rejected the closing date. (Id.). The closing did not occur.

In Count I of the Amended Complaint, Plaintiff alleges that Defendant anticipatorily repudiated the Agreement: (1) by failing to provide the title commitment to Plaintiff within ten days of the effective date of the Agreement; (2) by later providing the title commitment, "but with caveats designed to thwart the sale" to Plaintiff by indicating that title would "not be good and marketable"; (3) "by entering into a contract with a third party purchaser (upon information and belief) to purchase" the property; (4) by "mak[ing] certain statements" to Plaintiff "to the effect that [Defendant] is attempting to repudiate the terms and conditions of the [Agreement] . . . so that it can turn around and sell [the property] to the third party" at a higher price and precluding Plaintiff from receiving the benefit of the bargain; and (5) by refusing to proceed with the closing. (Am. Compl. ¶ 19).

In Count II, Plaintiff brings a claim for breach of contract, alleging that Plaintiff complied with the terms and conditions of the Agreement but that Defendant breached the Agreement (1) by failing to close on the closing date; (2) by failing to "comply with the obligation of good faith and fair dealing through engaging in conduct designed to thwart the closing" based on Defendant's "actual and documented knowledge that other potential third party purchasers would purchase [the property] at a higher price"; and (3) by failing to "comply with any other terms and conditions of the [Agreement] that are recognized in law

or in equity." (Id. ¶ 25).

In both counts, Plaintiff seeks specific performance of the Agreement. Defendant now moves to dismiss both counts for failure to state a claim on which relief can be granted.

### III. Discussion

"An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse performance in the future." Alvarez v. Rendon, 953 So. 2d 702, 709 (Fla. 5th DCA 2007). "Such a repudiation may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." Mori v. Matsushita Elec. Corp. of Am., 380 So. 2d 461, 463 (Fla. 3d DCA 1980). Moreover, "[i]f one party to an agreement has breached the agreement, the other party's failure to continue with the agreement is not considered a default of the contract." Jones v. Warmack, 967 So. 2d 400, 402 (Fla. 1st DCA 2007). Applying these principles to the allegations of the Amended Complaint, Plaintiff fails to state a cause of action for either anticipatory repudiation or breach of contract.

First, Plaintiff has not pleaded facts supporting anticipatory repudiation with respect to Defendant's provision of the title commitment. Plaintiff asserts both the lateness of the title commitment and the provision of the title commitment "with caveats" as acts of anticipatory repudiation. However, even if Defendant was several days late in providing the title commitment, Plaintiff accepted the timing of it and was proceeding toward closing[3]

---

[3]Under Florida law, "[t]ime is not of the essence in contracts for sale and purchase of real estate unless the contract so provides." Henry v. Ecker, 415 So. 2d 137, 140 (Fla. 5th DCA 1982). The Agreement provided that time was of the essence only as to closing, (see Agreement ¶ 4.1)—not in its other provisions, including the title commitment provision.

despite any lateness of the title commitment; moreover, Plaintiff has not explained how lateness of the title commitment evidences a refusal by Defendant to perform in the future rather than an effort to move the transaction toward closing.

Additionally, Defendant's disclosure to Plaintiff of the sixty-five other contracts does not evidence an intent not to perform in the future either. Under the Agreement, Plaintiff could make objections "founded on title not being marketable," and Defendant then could choose to cure or not cure any title defects; if Defendant elected not to cure title defects, Plaintiff's options were to walk away after having its deposit returned or to proceed with closing notwithstanding the defects. Cf. Jones, 967 So. 2d at 402 (noting that where the parties' agreement gave buyer the opportunity to raise title objections and the seller the option to cure them, the seller's provision of title with defects was not an immediate breach of the agreement). Plaintiff asserts that it could not raise title objections because Defendant would not provide it with the sixty-five contracts, but this argument misses the mark. Plaintiff has identified no obligation of Defendant to provide Plaintiff with the contracts, and by asking for the contracts Plaintiff was in essence raising title objections. Again, Plaintiff could walk away if it was not satisfied with the title it was going to receive, but the Agreement did not give Plaintiff the right to force Defendant to cure any title defects or to provide the questionable contracts. In sum, the title commitment issues do not support Plaintiff's anticipatory repudiation claim.

---

Plaintiff has not alleged that the failure of Defendant to provide the title commitment resulted in a delay in the closing date; indeed, the parties had agreed on a September 17 closing date—consistent with the timeline set out in the Agreement—and were proceeding toward closing on that date until Defendant learned of the lawsuit.

Next, Plaintiff's assertion that Defendant's alleged entering into a contract with a third party purchaser supports anticipatory repudiation also fails. Even assuming that Defendant had entered into a contract with a third-party purchaser, the Agreement does not forbid Defendant from entering into back-up contracts; Plaintiff's belief that Defendant had entered into any such third-party agreement does not give rise to a viable anticipatory repudiation claim.

The fourth action of Defendant that Plaintiff relies upon in support of Count I is Defendant's making of "certain statements" to Plaintiff—allegedly confirmed in one of the emails attached to the Amended Complaint—"to the effect that [Defendant] is attempting to repudiate the terms and conditions of the [Agreement]" and sell it to a third party at a higher price. (Am. Compl. ¶ 19). The email upon which Plaintiff relies for this assertion does not, however, support the anticipatory repudiation claim. In that email, one of Defendant's transactional attorneys wrote—after finding out about this lawsuit:

> What possible grounds could there be for such a filing? [Defendant] has followed each obligation to sale [sic] this property to [Plaintiff] and has had the closing date set from the day the contract was signed on August 3 [sic], 2012. The inspection period ended 30 days after and then closing was 15 days after that. What am I missing?
>
> We have repeatedly communicated our intention to honor our contract in spite of other parties trying to buy this property at a higher price and interfere with our contract.

(Ex. C to Am. Compl., at 5). These statements do not support—and indeed, they run counter to—Plaintiff's contention that Defendant was attempting to repudiate the Agreement. And, even if Plaintiff had "heard though the grapevine" that Defendant did not want to close

with Plaintiff, that is not the equivalent of a manifestation by Defendant of an intention not to perform under the Agreement.

The final action by Defendant that Plaintiff relies on in its anticipatory repudiation claim is Defendant's refusal to close on the closing date—conduct on which Plaintiff also bases its breach of contract claim in Count II. This is the only one of the actions alleged by Plaintiff that comes close to stating a claim for anticipatory repudiation, as the attached emails do reflect an unequivocal refusal by Defendant to perform. As Defendant notes, however, that action occurred after the filing of this lawsuit on August 24 and thus after Plaintiff had recorded the Agreement by attaching it to the Complaint—an action that Defendant asserts was a breach by Plaintiff of paragraph 8.6 of the Agreement.

Although Plaintiff argues that attaching the Agreement to the Complaint does not constitute "recording" in violation of the Agreement and that it is frivolous for Defendant to argue that it does, (see Doc. 24 at 10-11), the Court agrees with Defendant's position on this point. Plaintiff contends that the Agreement prevents the parties only from recording the Agreement "in the public records" and maintains that this did not occur. (Id. at 11). However, Plaintiff filed a lawsuit in this Court with the Agreement attached to the Complaint, and Plaintiff also filed a notice of lis pendens based on having filed the lawsuit. These actions had the same effect as if Plaintiff had recorded the Agreement "in the public records" in the sense that Plaintiff uses the term. Under the Agreement, Plaintiff's recording of the Agreement "cause[d] [the] Agreement and all rights under it forthwith to terminate without the necessity of any further action on the part of [Defendant]" and was "deemed a breach of [the] Agreement." (Agreement ¶ 8.6). Thus, Plaintiff breached the Agreement on August

24—several weeks before Defendant refused to close after finding out on September 12 about the lawsuit. Any later action by Defendant that might amount to a breach is excused by Plaintiff's prior breach. See Jones, 967 So. 2d at 402.

In sum, on the facts alleged by Plaintiff and as evidenced by the attachments to the Amended Complaint, Plaintiff fails to state a cause of action for anticipatory repudiation or breach of contract. Thus, both counts of the Amended Complaint shall be dismissed. In light of this dismissal, the lis pendens must be dissolved as well.[4]

### IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss (Doc. 22) is **GRANTED.** Both counts of the Amended Complaint (Doc. 16) are **DISMISSED**.

2. Based on the dismissal of both of Plaintiff's claims, the Lis Pendens filed in this case (Doc. 2) and recorded in Osceola County, Florida, at Book 4316, Page 656, is hereby **DISSOLVED**. Defendant shall file a certified copy of this Order with the Clerk of Court in Osceola County, Florida.

3. This Order supersedes and renders moot review of the Order (Doc. 29) entered

---

[4]Before it filed its motion to dismiss, Defendant filed a Motion to Dissolve Lis Pendens or in the Alternative, to Require a Lis Pendens Bond (Doc. 11). That motion was referred to the assigned magistrate judge, and the magistrate judge held a hearing on that motion on December 18, 2012. (See Mins., Doc. 26). The next day, the magistrate judge entered an Order (Doc. 29) requiring Plaintiff to post a bond within fourteen days in order to keep the lis pendens in place. Plaintiff requested review of the magistrate judge's Order, (Doc. 30), and Plaintiff's request for a stay of that Order pending review was granted, (Doc. 34). Dismissal of Plaintiff's claims necessitates dissolution of the lis pendens and renders review of the magistrate judge's Order moot.

by the magistrate judge on December 19, 2012, on Defendant's Motion to Dissolve Lis Pendens or in the Alternative, to Require a Lis Pendens Bond (Doc. 11). Plaintiff's Exceptions (Doc. 30) to the magistrate judge's Order (Doc. 29) and Plaintiff's Motion for Leave to File Reply (Doc. 38) are **DENIED as moot**.

4. Although this Order disposes of Plaintiff's claims, Defendant has filed Counterclaims in this case. (See Doc. 12). **On or before Friday, March 22, 2013**, Defendant shall, after conferring with Plaintiff, file a status report of five pages or fewer regarding the counterclaims.

**DONE** and **ORDERED** in Orlando, Florida this 14th day of March, 2013.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record